IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| JASMINE JENKINS, Substitute Party for John A. Jenkins, Deceased, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | CV 115-111 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | ) ) ) ) ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Jasmine Jenkins appeals the decision of the Acting Commissioner of Social Security denying her father's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.[1] Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

---

[1]The Court **DIRECTS** the **CLERK** to update the docket in accordance with the caption on this Report and Recommendation, which reflects the appointment of John A. Jenkins' daughter as substitute party after his death. (See doc. no. 15, Attach. 1.) The Court continues to use Plaintiff throughout this recommendation in reference to the original claimant, John A. Jenkins.

**I.      BACKGROUND**

Plaintiff applied for DIB and SSI on July 19, 2012, alleging a disability onset date of June 1, 2008. Tr. ("R."), pp. 19, 160-67. Plaintiff was forty-six years old on his alleged disability onset date and was fifty-two years old at the time the Administrative Law Judge ("ALJ") issued the decision under consideration. R. 32, 160. Plaintiff initially applied for benefits based on allegations of neck and back injury. R. 183. Plaintiff completed ninth grade, and prior to his alleged disability, Plaintiff had accrued a relevant work history that included crane operator, handyman, custodian, and stacking on a box line. R. 22, 28, 29, 41-42, 44-46, 184.

The Social Security Administration denied Plaintiff's applications initially and on reconsideration. R. 19, 65-104. Plaintiff requested a hearing before an ALJ, R. 123, and the ALJ held a hearing on January 6, 2014. R. 37-64. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Mary Cornelius, a Vocational Expert. Id. On February 28, 2014, the ALJ issued an unfavorable decision. R. 16-36.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since June 1, 2008, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine status post-surgery, diabetes mellitus, hypertension, depression and organic mental disorder (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant can do no overhead reaching with the bilateral upper extremities.[2] He can no more than frequently balance, kneel, crouch and climb ramps and stairs. He can no more than occasionally stoop, crawl and climb ladders, ropes and scaffolds. He must avoid even moderate exposure to hazards. The claimant is limited to simple tasks but no detailed or complex tasks. All jobs should require minimal reading and no reading over a third-grade level. Thus, the claimant is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including garment sorter, parking lot attendant, and usher/lobby attendant (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from June 1, 2008, through February 28, 2014 (the date of the ALJ's decision) (20 C.F.R. §§ 404.1520(g) and 416.920(g)).

R. 21-31.

When the Appeals Council denied Plaintiff's request for review, R. 1-5, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ erred in finding Plaintiff did not meet Listing 12.05C. See doc. no. 15 ("Pl.'s Br."). The Commissioner maintains the ALJ's conclusion that Plaintiff did not

---

[2]"Light work" is defined as:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) & 416.967(b).

3

meet Listing 12.05C is supported by substantial evidence. See doc. no. 16 ("Comm'r's Br.").

## II.    STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff claims the ALJ erred in determining he does not meet the requirements of Listing 12.05C. Pl.'s Br., pp. 3-8. In particular, Plaintiff claims the ALJ erred in her evaluation of Plaintiff's IQ scores. See id. Plaintiff also recites portions of the medical record in an apparent attempt to show he meets the additional requirement of Listing 12.05C that he have a physical impairment imposing an additional and significant work-related limitation of function. Id. at 5-7. However, for two reasons the Court confines its analysis to the initial mental impairment requirement of Listing 12.05C

First, as discussed below, the ALJ's decision about the level of mental impairment is supported by substantial evidence. Second, Plaintiff's implicit argument about a physical impairment imposing an additional work-related limitation of function is based entirely on citations to select portions of exhibits without reference to, or explanation as to how, the ALJ's assessment of the entire record was legally insufficient. Because Plaintiff's briefing on medical issues does not analyze the legal sufficiency of the administrative decision as delivered by the ALJ and instead simply relies on his own interpretation of select portions of the record, Plaintiff seemingly wants the Court to revisit the issue of disability *de novo*. The law does not allow the

Court to do this. As explained in section II, *supra*, determination as to whether there is substantial evidence in the record to support fact findings in a social security disability case does not involve reweighing evidence, trying issues *de novo*, or substituting the Court's judgment for that of the Commissioner. Thus, the Court turns to the ALJ's evaluation of Plaintiff's mental impairment.

### A. The Requirements for Satisfying Listing 12.05C at Step Three of the Sequential Evaluation Process

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that his condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014); Wilkinson *ex rel*. Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987).

In order to show that his impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during

6

the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. §12.00A; see also Perkins v. Comm'r, Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997). Thus, "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria, to prove entitlement to disability benefits under Listing 12.05." Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 768 (11th Cir. 2012). The regulations give several examples of adaptive activities, including: "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00C(1).

Listing 12.05C states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. § 12.05C. Thus, a claimant generally meets the Listing 12.05C criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992); see also Perkins, 553 F. App'x at 873 (requiring a showing for Listing 12.05C claim that individual meets the Listing 12.05 diagnostic criteria, including deficits in adaptive function, along with onset before age twenty-two, a qualifying IQ score, and the requisite deficits

7

in work related functioning). However, "a valid I.Q. score need not be conclusive of [intellectual disability] where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

### B. The ALJ's Finding that Plaintiff Did Not Meet Listing 12.05C Is Supported by Substantial Evidence.

Although a low IQ score raises a presumption of intellectual disability, that presumption may be rebutted with evidence of daily activities that are inconsistent with a diagnosis of intellectual disability. See Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001). Furthermore, the results of standardized tests are only part of the overall assessment, which includes an analysis of daily activities and behavior for a determination on whether there are deficits in adaptive functioning. See Frame v. Comm'r, Soc. Sec. Admin., 596 F. App'x 908, 910, 912-13 (11th Cir. 2015). As discussed below, the ALJ's extensive review of the record shows that even assuming the validity of a full-scale IQ score of 67 or 69, R. 212, 331, Plaintiff has not established he meets Listing 12.05C.

The ALJ recognized Plaintiff had been tested with IQ scores of 67 in 2013 and 69 in elementary school. R. 22, 28. Plaintiff spends much of his briefing arguing the ALJ improperly tried to discredit these scores but fails to recognize the ALJ did not determine the scores were invalid. What the ALJ determined is that the scores standing alone are not dispositive. In accordance with the requirements of the Listing, the ALJ acknowledged the scores but then went on to discuss why they were inconsistent with other evidence in the record concerning daily activities and behavior. See Lowery, 979 F.2d at 837

First, following the psychological examination conducted at the request of Plaintiff's counsel by Edwin Sperr, Ph.D., Plaintiff was diagnosed with borderline intellectual functioning. R. 28, 331. A diagnosis of borderline intellectual functioning "is mutually exclusive of mental retardation." Jordan, 470 F. App'x at 768-69. Plaintiff does not point to any diagnosis of mental retardation in the record, and the ALJ noted there is no record evidence of treatment for mental disorders or intellectual deficits. R. 22. Indeed, in his disability application, Plaintiff stated he could read and did not identify any mental conditions (including emotional or learning problems) that limited his ability to work. R. 182-83; see also Comm'r's Br., p. 6 (noting Plaintiff never claimed to have left job based on cognitive deficits, did not list mental or learning difficulties on disability forms, and other than trouble with reading, has not identified functional limitations from alleged mental impairment).

Second, the record as reviewed by the ALJ shows Plaintiff did not have the requisite deficits in adaptive functioning to meet the Listing. R. 22-23, 28-30. The ALJ extensively reviewed Plaintiff's daily activities and behavior. The ALJ found only mild restrictions in activities of daily living. R. 23. Plaintiff testified he (1) manages his self-care independently, (2) could do his own laundry if his 89-year old mother or his two sisters did not do it for him, (3) prepares for himself snacks and food in the microwave, and (4) attends church services. R. 23, 53-56.

Moreover, although Plaintiff only completed the ninth grade, the ALJ noted Plaintiff had taken and passed a written driver's license test. R. 22, 53. Plaintiff also had a work history spanning longer than a decade that included working as a crane operator, handyman, custodian, and stacking on a box line. R. 22, 28, 29, 41-42, 44-46, 184. Plaintiff reported he stopped

9

working his last job as a crane operator not because of reasons related to any mental impairment but because the plant closed. R. 29-30, 47.

The ALJ also reviewed the psychological evaluation conducted by Dr. Sperr. R. 23, 27-28. Dr. Sperr conducted his evaluation of Plaintiff on May 31, 2013, and diagnosed depressive disorder, a reading learning disorder, borderline intellectual functioning, and a full-scale IQ score of 67. R. 28, 331. As to Plaintiff's IQ score, Dr. Sperr stated, "Although his IQ scores are deemed to be valid, he would not appe[a]r to meet all criteria for retardation and he likely falls in the borderline range." R. 331.

Plaintiff was oriented to person, place, and time, and his overall memory operations did not seem significantly limited during the evaluation. R. 330. Dr. Sperr opined that although Plaintiff's symptoms would likely impair his ability to focus on job tasks, maintain consistency, and communicate with job peers, individuals with similar intellectual skills are generally able to perform the unskilled and semi-skilled jobs Plaintiff had performed in the past. R. 28-29, 331-32. Plaintiff's ability to read at the 2.6 grade level amounted to functional illiteracy, R. 331, but Dr. Sperr opined Plaintiff should be able to understand and follow simple job instructions. R. 28, 332. The ALJ's RFC limiting Plaintiff to simple tasks and jobs that require minimal reading and no reading over a third-grade level accounted for Dr. Sperr's comments. R. 24, 28.

In sum, substantial evidence supports the ALJ's finding, based on an extensive review of the record, that Plaintiff did not satisfy Listing 12.05C, despite the existence of IQ scores of 67 and 69. As current deficits in adaptive functioning are an additional requirement alongside a valid IQ score in the necessary range, Plaintiff's arguments fail to rebut the ALJ's finding that he does not satisfy the requirements of Listing 12.05C. See Perkins, 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05C despite IQ in

required range due to plaintiff's work experience and daily living activities); <u>Harris v. Comm'r of Soc. Sec.</u>, 330 F. App'x 813, 815 (11th Cir. 2009) (finding substantial evidence to support conclusion claimant did not meet Listing 12.05C, despite participation in special education classes, where he "was never diagnosed with mental retardation, only borderline intellectual functioning" and ability for self-care, managing money, and communicating effectively with others ruled out deficits in adaptive functioning necessary to meet Listing); <u>Davis v. Astrue</u>, Civ. Act. No. 2:07cv880, 2008 WL 2939523, at *3 (N.D. Ala. July 25, 2008) (noting no document in record classified claimant as intellectually disabled and relying on medical opinion that adaptive behavior may elevate claimant with IQ scores in mild range of intellectual disability to borderline intellectual functioning that does not satisfy Listing 12.05C).

**IV. CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of August, 2016, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA